**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SPRUCE STREET PROPERTIES, LTD.**, an Ohio limited partnership, d/b/a **PITTSBURGH SPRUCE STREET PROPERTIES**, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | 2:09cv1405 **Electronic Filing** |
| **DR. FRANCIS NOBLESSE**, an individual, ) ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

September 19, 2011

# I.   INTRODUCTION

Plaintiff, Spruce Street Properties, Ltd. ("Spruce Street"), initiated this action by complaint filed in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging breach of contract by Defendant, Dr. Francis Noblesse ("Noblesse").  Noblesse removed the action to this Court, and filed an Answer and Counterclaim alleging: (1) breach of contract; (2) conversion; (3) violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. ANN. § 201-1 *et seq*.; (4) fraudulent misrepresentation; and (5) negligent misrepresentation.  Spruce Street and Noblesse have filed cross-motions for summary judgment, responses have been filed, and the matters are now before the Court.

## II.   STATEMENT OF THE CASE

On or about August 22, 2007, Spruce Street and Noblesse entered into an Agreement of

Sale (the "Agreement") for a condominium unit (the "Unit") to be erected in the Carlyle, a

condominium development in Pittsburgh, Pennsylvania. Spring Street Statement of Material

Facts ("SS. SMF") ¶ 1; Noblesse Concise Statement of Material Facts[1] ("Nob. CSMF") ¶ 13;

Noblesse Appendix ("Nob. App.") Exhibit 8. Pursuant to the Agreement, the purchase price of

the Unit was Four Hundred Fifty-Three Thousand Three Hundred Fifteen ($453,315.00) Dollars.

SS. SMF ¶ 2.  In accordance with the Agreement, Noblesse paid Spruce Street Forty-Five

Thousand ($45,000.00) Dollars in "hand money" as a deposit upon execution of the Agreement.

Nob. CSMF ¶ 14.  Noblesse is entitled to a return of his deposit if the Agreement is terminated

pursuant to Paragraph 6(b) of the Agreement. Nob. App. Ex. 8 ¶ 6.

Paragraph 6(b) of the Agreement, title "DEFAULT," provides:

> If for any reason Seller is unable to convey title at the Closing in
> accordance with the requirements of this Agreement, or if for any
> reason Seller is unable to construct or complete the Unit by
> February 1, 2009, Buyer shall have the right to reconsider his
> purchase of the Unit.  If Seller can demonstrate to Buyer that the
> completion of the Unit is imminent, the Buyer shall proceed with

---

[1]    Noblesse has filed a Concise Statement of Material Facts in support of his motion for summary judgment. Many of Spruce Street's responses to Noblesse's statement of facts, however, are inappropriate.  The Local Rules of the United States District Court for the Western District of Pennsylvania require that Plaintiff file a responsive "concise statement which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by . . . admitting or denying whether each fact contained [therein] . . .  is undisputed and/or material . . . setting forth the basis for the denial if any fact . . . is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record . . ." See LR 56.1(C)(1)(a) & (b).  In many instances, Spruce Street "objects" to the materiality of the statement of fact without denying or admitting the factual averment. Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56.1(E).

the closing as outlined herein.  If Seller cannot demonstrate that the
completion of the Unit is imminent, then upon written request of
the Buyer, Seller shall return to Buyer all monies paid hereunder,
whereupon this Agreement shall become null and void and of no
further force and effect and neither party shall have any further
rights or obligations.  The foregoing shall be Buyer's sole remedy
in the event of Seller's default or failure as aforesaid.

*Id.* Paragraph 14 of the Agreement, titled "CLOSING[2]," provides in relevant part "It is

contemplated that Seller will deliver said Unit to Buyer on or before February 1, 2009 (the

"Closing") . . . Such time of delivery shall not be extended  . . . [Buyer] shall have the right to

terminate this Agreement as outlined in paragraph 6(b)." Nob. App. Ex. 8 ¶ 14.  The Agreement

also contains a "TIME IS OF THE ESSENCE" clause which states in relevant part: "Time is of

the essence of this Agreement. . ." *Id.* at ¶ 10.   In the "NOTICE REGARDING TIME OF THE

ESSENCE", the Agreement provides: " 'Time is of the essence' means that all times and dates in

this Agreement are material terms of this Agreement, and must be met to avoid the breach of the

Agreement." *Id.* at p. 9.

By letter dated January 6, 2009, Leslie K. Eisel ("Eisel"), acting on behalf of Spruce

Street, issued Noblesse a "60 day notice of closing" and requested that Noblesse indicate a

preferred closing date on an attachment and return the attachment to her by January 16, 2009.

SS. SMF ¶ 5; Nob. CSMF ¶¶ 22, 23 & 25.  The closing dates proposed by Eisel on the attached

form were from March 2, 2009, through April 11, 2009. Nob. CSMF ¶ 24.  Noblesse responded

by e-mail and requested confirmation that "the work on the building and on the units is entirely

---

[2]    It should also be noted that Noblesse was required to complete "Closing" upon substantial
completion of the Unit.  Substantial completion was deemed to occur under the Agreement
when*, inter alia,* the Certificate of Occupancy for the Unit had been issued by the City of
Pittsburgh. Nob. App. Ex. 8 ¶ 10.  The Certificate of Occupancy for the Unit was issued by the
City of Pittsburgh on August 2, 2010 and listed a completion date of July 23, 2010.  Nob. CSMF
¶¶ 67 & 69.

complete at this time," and informed Eisel that before he could make a decision on a closing date, he needed to travel to Pittsburgh and inspect the Unit.  Nob. CSMF ¶¶ 28 & 29.

Before responding to Noblesse's e-mail, Eisel forwarded her draft response to David Bishoff ("Bishoff"), Spruce Street's chief executive, who instructed Eisel to change the draft response[3] to state: "[T]he notice is being sent out in accord with the contract as we are preparing and will have the unit 'completed' in accord with and as defined by the terms of the contract." Nob. CSMF ¶ 32.  This statement was included in Eisel's response dated January 13, 2009.  SS. SMF ¶ 8; Nob. CSMF ¶ 35.  Noblesse responded to Spruce Street by e-mail dated January 16, 2009, and informed Eisel that he and his wife would be traveling to Pittsburgh to visit the Carlyle on January 23rd and 24th.  Nob. CSMF ¶ 38.  In addition, Noblesse responded to Spruce Street's request that he select a closing date as follows: "With respect to a date for closing, PLEASE schedule us as far back as possible, and please not before the week of 6-11 April." *Id.*

With regard to Noblesse's intent to visit the Unit, Spruce Street's Katie Richards sent him an e-mail dated January 22, 2009 stating: "The building is still under construction so someone must escort all guests including owners at all times within the building  . . . if it is possible to push your visit back about a week or so you would probably see more progress." Nob. CSMF ¶ 44.  Noblesse traveled to Pittsburgh and visited the Unit on January 23rd, and made the trip again the next week to check the Unit on January 30, 2009. SS. SMF ¶¶ 10 & 12; Nob. CSMF ¶¶ 45 & 46.

During his visit on January 30th, Noblesse found a sign posted in the Carlyle's lobby that stated: ""HARDHATS ARE REQUIRED ON THIS PROJECT AT ALL TIMES. NO

---

[3]    Eisel's original draft response to Noblesse's question about completion was "Are the condominiums completed? No. We are in the final phases of completion and anticipate closings could begin as early as the beginning of February." Nob. CSMF ¶ 31.

EXCEPTIONS." Nob. CSMF ¶ 56.  With regard to the Unit, two (2) days prior to the contract completion date, Noblesse noted the following:

- One window in the Unit was covered in plywood and had a sign stating: "DO NOT OPEN." Nob. CSMF ¶ 58.

- The exterior wall of the Unit was pierced with metal rods to support a construction elevator attached to the outside of the building. Nob. CSMF ¶ 59.

- The Unit had no furnace, air conditioner, water heater, stove, sinks, or countertops. Nob. CSMF ¶ 60.

- A bathroom specified to be approximately six (6) feet wide in the Agreement, but as built measured approximately two (2) feet shorter. Nob. CSMF ¶ 63.

Noblesse further alleges, and Spruce Street fails to deny, that a construction schedule dated January 29, 2009, which listed the planned finishing dates for interior work on the Unit indicated that tasks with a completion goal of September 2008, had not yet been completed. Nob. CSMF ¶ 61. Moreover, the January 2009 construction schedule listed thirteen (13) tasks for the Unit of which eight (8) were marked zero (0%) percent completed, and only one task pertaining to cabinets was marked as one hundred (100%) percent complete. Nob. CSMF ¶ 62.

On February 1, 2009, the Unit was not completed under the terms of the Agreement. Nob. CSMF ¶ 54; Joint Stipulation ¶ 32.  By letter dated January 31, 2009, mailed certified to Spruce Street on February 2, 2009, and received by Spruce Street on February 4, 2009, Noblesse terminated the contract under Paragraph 6(b) of the Agreement and requested the return of his $45,000.00 deposit. Nob. CSMF ¶¶ 77, 78 & 81.  In his letter, Noblesse set forth his many disappointments with the project, including the conditions he noted on his visits on the 23rd and 30th of January, and stated:

> The delivery date of February 1, 2009, has now arrived.  It is
> perfectly clear from my observations during my visits on January
> 23 and 30, 2009, and my conversation with Eric Trainer on
> January 23, 2009, that you are VERY FAR from able to deliver the
> unit in accordance with our contract.  Therefore, I consider our
> contract terminated; and hereby request that you promptly (time is
> of the essence here) return the "hand money" of $45,000 that is
> currently held in escrow.  . .

*See* Noblesse Motion for Summary Judgment, Appendix Ex.16. With regard to Spruce Street's

right under Paragraph 6(b) to demonstrate that completion of the Unit was "imminent," Noblesse

wrote:

> . . . "demonstrate" means that you need to provide (i) a LIST OF
> SPECIFIC TASKS (e.g. install bathroom fixtures and vanities,
> granite counter tops in the kitchen, granite tiles on the shower
> walls . . ., carpets, paint) that need to be done – in both my unit and
> the common areas (in particular to be able to access the unit) –
> with (ii) PRECISE EXPLANATIONS as to the manner in which
> these tasks will be performed (e.g. granite counter tops and
> bathroom fixtures cannot be installed until they are on hand; units
> cannot be accessed as long as the common areas are "hard hat
> zones"; or elevators do not work or do not work properly),  and
> (iii) PECISE DATES when the tasks will be completed (in this
> regard, please note that "very soon around the corner" are not
> dates; February 5, 2009 is a date.) In other words, David, you need
> to clearly explain (i) WHAT tasks need to be done, (ii) HOW they
> will be done, and (iii) WHEN they will be completed; and it all
> needs to be done IMMINENTLY.

*Id.*

After receiving Noblesse letter indicating his termination of the Agreement and inviting

Spruce Street to demonstrate that the project would be completed "imminently," Spruce Street

neither demonstrated nor attempted to demonstrate that the Unit would be completed in

accordance with the terms of the Agreement.  Nob. CSMF ¶¶ 82-85.  The only response to

Noblesse, was a letter dated February 9, 2009, from Spruce Street's counsel, Brenda S. Sebring

("Sebring").  SS SMF ¶ 22.  In her letter, Sebring attempted a *post hoc* interpretation of

Paragraph 6(b) and further stated:

> Not only did you [sic] letter dated January 31, 2009 deny Spruce
> Street the right to demonstrate that the completion of the Unit is
> imminent, but your email two (2) weeks earlier indicates that you
> were proceeding with a closing in April and that you were forgoing
> any "right to reconsider" the purchase of the Unit.  .  . Based on
> your recent tour of the building and the Unit, you were able to
> confirm that the completion of the Unit is imminent.

*Id.*  Spruce Street refused to return Noblesse $45,000 deposit.  Nob. CSMF ¶ 86.


### III.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no

genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of

law. To support denial of summary judgment, an issue of fact in dispute must be both genuine

and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the

non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty

Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court

is not permitted to weigh the evidence or to make credibility determinations, but is limited to

deciding whether there are any disputed issues and, if there are, whether they are both genuine

and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the

party opposing summary judgment and all reasonable inferences from the facts must be drawn in

favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177,

180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.   **DISCUSSION**

A.   <u>Breach of Contract Claim</u>

Spruce Street contends that it is entitled to summary judgment on its claim for breach of contract because: (1) the word "imminent" as used in Paragraph 6(b) of the Agreement is an ambiguous term whose meaning was negotiated prior to execution by the parties; (2) Noblesse agreed to extend the time of performance set forth in Paragraph 6(b) of the Agreement beyond February 1, 2009; and (3) Noblesse's letter terminating the Agreement and seeking the return of his deposit was an anticipatory breach of the Agreement.  The Court finds Spruce Street's arguments unpersuasive, and for the reason's set forth below, will deny its motion for summary judgment on its breach of contract claim.

Spruce Street first argues that "imminent" as used in Paragraph 6(b) of the Agreement is an ambiguous term whose meaning was negotiated prior to execution by the parties.  Paragraph 6(b), in relevant part states:

> . . . if for any reason Seller is unable to construct or complete the Unit by February 1, 2009, Buyer shall have the right to reconsider his purchase of the Unit.  If Seller can demonstrate to Buyer that the completion of the Unit is imminent, the Buyer shall proceed with the closing as outlined herein.  If Seller cannot demonstrate that the completion of the Unit is imminent, then upon written request of the Buyer, Seller shall return to Buyer all monies paid hereunder, whereupon this Agreement shall become null and void and of no further force and effect  . . .

*See* Nob. App. Ex. 8 ¶ 6.  It is Spruce Street's contention that the definition of "imminent" was negotiated and its meaning is set forth in a Noblesse e-mail sent to Spruce Street on or before August 21, 2007, stating in relevant part:

> . . . the deadline is not a critical element (quality of work is) but provides me with a possible way out in event that serious problems that would lead me to have to conclude that the project could not be completed as envisioned or that the quality of the work would leave to be desired. But I do not expect that to happen, and you need not worry about the 1 Feb. completion date so long as "things are moving on more or less according to plans".  . . .

SS. SMF ¶ 15.  Based upon the above correspondence, Spruce Street contends that the parties reached an agreement, as a matter of law, that the term "imminent," as employed in Paragraph 6(b), meant that the project could "be completed as envisioned" and that the quality of work would not "leave to be desired".  Spruce Street contends that the parties reached an agreement, as a matter of law, that it could demonstrate to Noblesse that the completion of the Unit was "imminent" by showing that "things are moving on more or less according to plans."

Under the parol evidence rule, "[w]here the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best,

but the only, evidence of their agreement . . . and its terms and agreements cannot be added to

nor subtracted from by parol evidence." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425,

436 (Pa. 2004) (quoting *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)). Parol evidence is

any oral testimony, written agreements, or other writings created prior to the contract that would

serve to explain or vary the terms of a contract. *Lenzi v. Hahnemann University*, 664 A.2d 1375,

1379 (Pa. Super. 1995).

      The fundamental rule in interpreting the meaning of a contract is to ascertain and give

effect to the intent of the contracting parties. *Felte v. White*, 302 A.2d 347, 351 (Pa. 1973). The

intent of the parties to a written agreement is to be regarded as being embodied in the writing

itself. *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).  Moreover, the whole instrument

must be taken together in arriving at contractual intent. *Felte v. White*, 302 A.2d at 351. Courts

do not assume that a contract's language was chosen carelessly, nor do they assume that the

parties were ignorant of the meaning of the language they employed. *Steuart v. McChesney*, 444

A.2d at 662. "When a writing is clear and unequivocal, its meaning must be determined by its

contents alone." *Felte v. White*, 302 A.2d at 351 (quoting *East Crossroads Center Inc. v. Mellon-

Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965)). At the same time, "[a]greements and negotiations

prior to or contemporaneous with the adoption of a writing are admissible . . . to establish the

meaning of ambiguous terms in the writing, whether or not the writing is integrated.[4]" *Martin v.

Monumental Life Ins. Co.,* 240 F.3d 223, 233 (3d Cir. 2001).   "Under Pennsylvania law,

ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted

by the court as a question of law." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d

1001, 1010, n. 10 (3d Cir. 1980). Determination of whether the terms of a contract are

---

[4]    The Agreement in the instant case contains an integration clause titled "ENTIRE
AGREEMENT." Nob. App. Ex. 8 ¶ 27.

ambiguous is a question of law. *Ankerstjerne v. Schlumberger, Ltd.*, 155 Fed. Appx. 48, 49 (3d Cir. 2005).

A contract contains an ambiguity "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* The "reasonably" qualifier is important, as there is no ambiguity if one of the two proffered meanings is unreasonable. *See Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 429-430 (Pa. 2001). This question, however, cannot to be resolved in a vacuum. Contractual terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* (quoting *Madison Construc. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). A contract "is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995). Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986).

Extrinsic or parol evidence of an alleged ambiguity is only proper if the evidence addresses the meaning of a specific term or terms in the contract, and not the subjective intent of the parties. *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001). The proffered evidence is improper if it attempts to show that the parties intended something different that was not incorporated into the contract, "[otherwise] the ambiguity inquiry degenerate[s] into an impermissible analysis of the parties' subjective intent, such an inquiry appropriately is confined to 'the parties linguistic reference' . . . The parties'

expectations, standing alone, are irrelevant without any contractual hook on which to pin them."
*Id.* (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d at 614 n.9).

The e-mail Spruce Street relies upon in this instance is not proper extrinsic evidence as it contains no reference to, and fails to address the meaning of, the contractual term "imminent." In his e-mail, Noblesse sets forth his subjective intentions with regard to the February 1, 2009, construction deadline date. The proffered evidence does nothing to aid this Court in determining the proper meaning of "imminent" as employed in Paragraph 6(b), and in light of the particular facts of this case.

The Court must therefore consider the plain meaning of the term, the alternative meaning suggested by Spruce Street, and such meaning's effect on the instrument as a whole. Imminent is defined as "impending, about to happen, . . . immediate, close or near at hand, forthcoming." *See* Oxford Dictionary and Thesaurus, p. 734 (1996). Black's Law Dictionary defines imminent as "near at hand; mediate rather than immediate; closer rather than touching; impending; on the verge of happening . . ." BLACK'S LAW DICTIONARY, 676 (5th Ed. 1979). Spruce Street's perceived meaning, therefore, is not reasonable as it requires this Court to "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999).

This Court must also determine whether Spruce Street's suggested meaning effects other provisions of the Agreement. As set forth above, there is "time is of the essence" clause in the Agreement. Time may be made of the essence for the performance of a contract for the sale of realty by an express provision to that effect, and such a provision is valid and enforceable. *See* 1 P.L.E. SALES OF REALTY § 59 ("Time is of the Essence"), citing *Jeffrey v. Pennsylvania Mining Co*, 53 A. 772 (Pa. 1902). In a contract:

> one party may make his promise expressly conditional on the exact
> performance of any agreed condition, and, hence, that performance
> on a specified day or hour, or before a specified day may be made
> such a condition. Moreover, though performance at such a time is
> in terms merely a promise, yet, if the parties also provide that time
> is of the essence, in those or equivalent words, they thereby agree
> that a breach of the promise is material or, otherwise expressed,
> that timely performance is in effect a condition.

*In re Zerodec Mega Corp.*, 54 B.R. 814, 816-817 (Bankr. E.D. Pa. 1985) (quoting 6 WILLISTON ON CONTRACTS, § 846 (3rd ed. 1962) (footnotes omitted)).  If the Court was to interpret "imminent" in the manner requested by Spruce Street, the time is of the essence clause would have no force or effect.  An interpretation will not be given to one part of the contract which will annul another part of it. *Cepak v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001).  Viewing the Agreement as a whole, giving the terms of the contract their plain meaning, and assuming the parties did not choose the word "imminently" carelessly, Spruce Street's suggested alternative definition of imminent is not reasonable and therefore, fails to create an ambiguity in the Agreement[5].

Notwithstanding the Court's finding that "imminent" is not ambiguous as employed in Paragraph 6(b) of the Agreement, the ultimate determination of breach does not depend on the definition of "imminent" in this instance. The parties agree that construction of the Unit was not complete on February 1, 2009. Under Paragraph 6(b), once Noblesse gave Spruce Street notice of his intention to terminate the contract, Spruce Street had the opportunity to "demonstrate to [Noblesse] that the completion of the Unit [was] imminent." If Spruce Street did so, Noblesse was required to proceed with the closing. If it failed to so demonstrate, Spruce Street was

---

[5]    Moreover, giving effect to Spruce Street's definition of imminent does not change the result. Noblesse's visits to the Unit on January 23 and January 30 of 2009, along with his conversations with Spruce Street's representative on the construction project, clearly indicated that there were "serious problems" that would allow him to conclude that the Unit would not be "completed as envisioned," and that the project was not proceeding "according to plans."

required to return Noblesse's $45,000.00 deposit.  Therefore, the definition of imminent is relevant only if Spruce Street attempted to demonstrate that completion of the Unit was imminent. Clearly, Spruce Street made no attempt to demonstrate that completion of the Unit was imminent after receiving Noblesse's written notice of termination. Having failed to do so, Spruce Street was required to return the $45,000.00 deposit to Noblesse.

Spruce Street makes an attempt to excuse its performance under Paragraph 6(b) by reference to Sebring's February 9, 2009, letter.  First, Sebring's *post-hoc* interpretation of Paragraph 6(b) is of no moment. By this Court's interpretation of the plain language of the Agreement, Paragraph 6(b) gave Noblesse a right to terminate if the Unit was not complete as of February 1, 2009, and if Spruce Street failed to demonstrate imminent completion. Whether a standard of reasonableness would be implied in determining whether completion of Unit was imminent is only relevant if Spruce Street did in fact attempt to so demonstrate.  It did not.

Sebring's letter further stated:

> Not only did you [sic] letter dated January 31, 2009 deny Spruce Street the right to demonstrate that the completion of the Unit is imminent, but your email two (2) weeks earlier indicates that you were proceeding with a closing in April and that you were forgoing any "right to reconsider" the purchase of the Unit. . . Based on your recent tour of the building and the Unit, you were able to confirm that the completion of the Unit is imminent.

Such statements have no basis in fact.  There is no evidence that Noblesse denied Spruce Street's right to demonstrate imminent completion of the Unit.  To the contrary, Noblesse challenged Spruce Street to so demonstrate, and explicitly set forth his expectations of the "WHAT," "HOW" and "WHEN" to be included in the demonstration.

This Court has carefully read Noblesse e-mail dated January 16, 2009, in which Sebring contends he was "forgoing any 'right to reconsider' the purchase of the Unit" and can find no

such indication.  Moreover, Sebring's contention that Noblesse was able to "confirm that the completion of the Unit is imminent" is wholly without merit, and utterly fails to create an issue of fact under Paragraph 6(b).  Further, Spruce Street's implication that Bishoff's alleged conversation with Noblesse at the Carlyle on January 30, 2009, was a demonstration of imminent completion, fails under both Paragraph 6(b) and Paragraph 20 requiring all notices be in writing and served by certified mail.

Spruce Street next contends that Noblesse agreed to extend the time of performance set forth in Paragraph 6(b) of the Agreement beyond February 1, 2009.  By letter dated January 6, 2009, Eisel issued a "60 day notice of closing" and requested that Noblesse indicate a preferred closing date on an attachment and return the attachment to her by January 16, 2009. SS. SMF ¶ 5; Nob. CSMF ¶¶ 22, 23 & 25.  The closing dates proposed by Eisel on the attached form were from March 2, 2009, through April 11, 2009. Nob. CSMF ¶ 24.  Spruce Street urges this Court to interpret Noblesse's ultimate response requesting a closing date "not before the week of 6-11 April" as a modification to Paragraph 6(b) of the Agreement.  There was absolutely nothing mentioned in Noblesse's response that would indicate a modification of the date by which construction of the Unit was to be completed.  Spruce Street requested that Noblesse select a closing date, there was no mutual assent to modify the Agreement.  Spruce Street's contention that there was a modification of Paragraph 6(b) fails as a matter of law.

The Court also finds that Noblesse's letter terminating the Agreement and seeking the return of his deposit was not an anticipatory breach of the Agreement.  Spruce Street contends that Noblesse committed an anticipatory breach of the Agreement because he "wrongfully terminated the Agreement, in violation of Paragraph 6(b) of the Agreement, on January 31, 2009."  Spruce Street Brief, p. 10.  Spruce Street's contention is contrary to the facts.

Though Noblesse's notice of termination was dated January 31, 2009, it is undisputed that the letter was mailed on February 2, 2209, and was received by Spruce Street on February 4, 2009. Under Paragraph 6(b), Noblesse had the right to reconsider his purchase and terminate the Agreement if construction on the Unit was not complete by February 1, 2009. His notice to Spruce Street, therefore, was timely under the clear terms of the Agreement.

Under Pennsylvania law, an anticipatory breach of contract occurs if there was "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so" by one party communicated to another. *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies*, 489 A.2d 733, 737 (Pa. 1985) (quoting *McClelland v. New Amsterdam Casualty Co.*, 185 A. 198, 200 (Pa. 1936)). Noblesse letter was not a refusal to perform, but was a valid termination under the terms of the Agreement.

This Court finds, therefore, that Spruce Street's motion for summary judgment on its breach of contract claims must be denied. Noblesse's motion for summary judgment on Spruce Street's breach of contract claims, Counts I, II and III of its complaint, shall be granted. Further, based on the Court's above analysis, Noblesse's motion for summary judgment on his breach of contract claim shall be granted.

B.      Gist of the Action/Economic Loss Doctrine

Spruce Street asserts that the gist of action doctrine precludes Noblesse's claims of fraudulent and negligent misrepresentation, as well as his claim pursuant to the UTPCPL. The gist of the action doctrine[6] is "designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-

---

[6]     Although also not expressly recognized by the Pennsylvania Supreme Court, the Third Circuit has predicted that Pennsylvania would adopt the "Gist of the Action" doctrine as set out by Pennsylvania's Superior Court. *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004).

casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citation omitted). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992)). That the alleged misconduct was fraudulent does not bar application of the gist of the action principle. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002).

Pennsylvania courts have recognized four areas where the gist of the action doctrine precludes recovery in tort: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d at 19; *Kia v. Imaging Sci. Intern., Inc.*, 735 F. Supp. 2d 256, 271 (E.D. Pa. 2010) (citing *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. 2003)).

Here, Noblesse asserts three (3) common law tort claims: conversion, fraudulent misrepresentation and negligent misrepresentation. Noblesse's conversion claim arises from Spring Street's refusal to refund his $45,000.00 deposit under Paragraph 6(b) of the Agreement, contending that Spruce Street's refusal to return the deposit resulted in the conversion of the funds. Clearly, Spruce Street's duty to return the $45,000.00 deposit arises from the express language of the Agreement. Therefore, because the Agreement is not collateral to Noblesse's tortious conversion claim, the claim is barred by the gist of the action doctrine.

The Court reaches a similar result regarding Noblesse's fraudulent misrepresentation and negligent misrepresentation claims. With regard to such claims, Noblesse alleges in his Counterclaim that Spruce Street "falsely represented that the Carlyle would be complete in 2008 and, then, in January 2009 and repeatedly thereafter (by demanding the [Noblesse] close), misrepresented that the Unit was complete when . . . the Unit was not complete nor would it be completed by February 1, 2009," or within an imminent time thereafter. *See* Counterclaim ¶¶ 76 & 84. Specifically, Noblesse sets forth the following misrepresentation he contends are actionable:

- A May 18, 2007, e-mail from a Spruce Street real estate agent that stated that the construction schedule indicated a June 2008 occupancy.

- A Spruce Street notice dated August 13, 2008, post-execution, indicating that completion of the Carlyle was proceeding quickly and closing would be scheduled.

- An October 31, 2008, letter from Bishoff to Noblesse indicating Spruce Street was "thrilled with the progress" of construction.

- Letters from Bishoff to the general contractor.

- Eisel's January 6, 2009, letter requesting that Noblesse schedule a closing by April 11, 2009.

- Eisel's January 13, 2009, e-mail incorporating Bishoff's changes to her original stating the unit would be completed "in accord with and as defined by" the terms of the contract.

Aside from the May 17, 2007, e-mail, which falls woefully short of establishing a fraud claim[7], the remainder of the alleged misrepresentations relate to the parties' rights and obligations under

---

[7]   In order to establish a fraud claim, Noblesse must prove by clear and convincing evidence: (1) a misrepresentation; (2) which is material to the disputed transaction; (3) made falsely, with knowledge of its falsity or recklessness for its truth; (4) made with the intent of misleading another into reliance upon it; (5) justifiable reliance on the misrepresentation; and (6) injury

the Agreement.  The Court, therefore, will grant Spruce Street's motion for summary judgment based upon the gist of the action doctrine on Noblesse's claims of conversion, fraudulent misrepresentation and negligent misrepresentation.

Spruce Street also contends that Noblesse's UTPCPL claim is barred by the gist of the action doctrine. Though the Court has not found precedential support for such contention, it certainly appears that Noblesse's UTPCPL claim consists of elements identical to his common law fraud and negligent representation claims. Therefore, the gist of action doctrine should apply in this instance to bar Noblesse's claim under Pennsylvania's consumer protection law. This Court need not find that the UTPCPL claim is barred under the gist of action doctrine, however, because it is barred under the economic loss doctrine.

The economic loss doctrine provides that "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss'--that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super. 1985)).  The Pennsylvania Supreme Court has not yet addressed whether a plaintiff can recover for pure economic loss under the UTPCPL, however, the Court of Appeals for the Third Circuit found the doctrine applicable to a UTPCPL claim for intentional fraud, and predicted the Pennsylvania Supreme Court would do the same. *Werwinski v. Ford Motor Co*, 286 F.3d at 680-681.

Relying on *Werwinski*, the United States District Court for the Eastern District of Pennsylvania held that plaintiff's UTPCPL claim was "interdependent with claims that could

---

which was proximately cause by reliance on the representation. *See Bortz v. Noon*, 729 A.2d 555, 560 ( Pa. 1999).  There is no evidence in the record that the May 17, 2007, was either false or that Noblesse relied on it to enter into the Agreement.

[have] arise[n] from the mortgage contract between the parties," and found the plaintiffs' UTCPCL claims barred. *Sarsfield v. CitiMortgage, Inc.*, 707 F. Supp. 2d 546, 559 (M.D. Pa. 2010). *See also Samson Lift Techs., LLC v. Jerr-Dan, Corp.*, 2010 U.S. Dist. LEXIS 26862 at *18 n.5 (M.D. Pa. Mar. 22, 2010) (holding that plaintiff must allege facts showing fraudulent inducement to be separate and distinct from the breach of contract to avoid application of the doctrine.); *Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc.*, 2007 U.S. Dist. LEXIS 57116 at *22 (E.D. Pa. Aug. 7, 2007) (applying doctrine to preclude fraudulent inducement claim where fraud allegations were based "solely on a failure to perform in accordance with express contractual terms"); *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002) ("Inducement claims remain viable only when a party makes a representation extraneous to the contract, but not when the representations concern the subject matter of the contract or the party's performance."). Moreover, this Court has also barred claims made under the UTPCPL based upon the economic loss doctrine.  *See Friscarella v. Midland Mortg. Co.*, 2011 U.S. Dist. LEXIS 53176, 1-2 (W.D. Pa. May 18, 2011).

Finding that Noblesse's allegations of misrepresentation to be related to the performance and obligations under the terms of the Agreement, this Court finds that his UTPCPL claim is barred by the economic loss doctrine.


V.   **CONCLUSION**

Based upon the foregoing, Spruce Street's motion for summary judgment shall be granted in part and denied in part. With regard to Noblesse's claims of conversion, fraudulent misrepresentation, negligent misrepresentation, and his claim based upon violation of the UTPCPL, Spruce Street's motion for summary judgment shall be granted.  In all other respects,

the motion must be denied. Noblesse's motion for summary judgment shall be granted in part and denied in part. With regard to Noblesse's request for summary judgment on his claim for breach of contract, and his request for summary judgment on Spruce Street's claims for breach of contract, the motion will be granted.  With regard to Noblesse's request for summary judgment on his conversion claim, the motion will be denied.  An appropriate order follows.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge


cc:     Brenda B. Sebring, Esquire
        Matthew L. Prather, Esquire
        David J. Berardinelli, Esquire
        Matthew S. McHale, Esquire

        (*Via CM/ECF Electronic Mail*)